UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONTOUR HARDENING, INC., | ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) ) |
| VANAIR MANUFACTURING, INC., | ) ) |
| *Defendant*. | ) ) |
| _____ | ) No. 1:14-cv-00026-JMS-MJD |
| VANAIR MANUFACTURING, INC., | ) ) |
| *Counter-Claimant*, | ) ) |
| vs. | ) ) |
| CONTOUR HARDENING, INC., | ) ) |
| *Counter-Defendant*. | ) |

**ORDER**

Plaintiff/Counter-Defendant Contour Hardening, Inc. ("Contour") has filed this patent-infringement action against Defendant/Counter-Claimant Vanair Manufacturing, Inc. ("Vanair"). [Filing No. 1.] Before the Court can consider the question of infringement, it must determine the scope and meaning of the parties' disputed claims from U.S. Patent No. 7,057,303 (the "'303 patent" or the "patent-in-suit"). The Court held a *Markman* hearing on August 25, 2015, to address the parties' arguments regarding the claims in dispute. [Filing No. 77.]

**I.**
**BACKGROUND**

Contour is the owner of the '303 patent, which was issued on June 6, 2006. [Filing No. 47-1 at 1.] The invention set forth therein relates to a vehicle-mounted alternating current ("AC") electrical generator system. [Filing No. 47-1 at 12.] It addresses the "long-felt need for an AC

1

electrical power source in locations not served by electrical utilities" such as construction sites or where an electrical power grid has not yet been extended. [Filing No. 47-1 at 12.] Although addressing that problem was not a new concept, the patent-in-suit provides that prior inventions had utilized inverters, direct current ("DC") voltage, and alternators to produce a pseudo-AC wave, resulting in an expensive complex electrical control system that was "relatively incapable of sustaining maximum or above maximum output for any length of time and lack[ing] reserve capacity to achieve really heavy-duty current output. . . ." [Filing No. 47-1 at 12.]

The present invention "consists of applying a readily available, highly commercially developed and relatively inexpensive AC generator to a vehicle instead of the overly complicated DC generators and inverters previously applied to such vehicles." [Filing No. 47-1 at 13.] An advantage of the AC generator is that it "produces a perfect sine wave which replicates the sine wave produced by utility companies as opposed to the modified or mock sine wave produced by standard inverters on the market." [Filing No. 47-1 at 13.] Because AC generators are very robust, they can "easily handle high continuous current loadings as would be experienced in typical construction site activities . . . ." [Filing No. 47-1 at 13.]

In January 2014, Contour filed this action against Vanair. [Filing No. 1.] In relevant part, Contour alleges that sometime around 2007, Vanair began manufacturing, selling, and offering for sale a vehicle-mounted AC generator system that infringes on Contour's '303 patent. [Filing No. 1 at 4-6.] Vanair denies those allegations, [Filing No. 22 at 4], and asserts counterclaims against Contour for non-infringement and patent invalidity, [Filing No. 22 at 9-11].

Presently pending before the Court are the parties' briefs regarding various disputed claim terms. [Filing No. 68; Filing No. 69; Filing No. 70.][1] The Court held a *Markman* hearing on August 25, 2015, [Filing No. 77], and the parties confirmed at the hearing that only two disputed claim terms remain that necessitate the Court's construction. Both parties presented handouts to the Court illustrating and explaining their various positions, and those were made part of the record. [Filing No. 78; Filing No. 79.]

## II.
### GENERAL CLAIM CONSTRUCTION STANDARDS[2]

A patent holder has the right to exclude others in the United States from making, using, selling, or attempting to sell the patented invention. 35 U.S.C. § 154(a)(1). Patents serve an important public notice function whereby "the public learns which innovations are the subjects of the claimed invention, and which are in the public domain." *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1361 (Fed. Cir. 2004). "[T]he public is entitled to notice of what the inventor has claimed and the Patent and Trademark Office has agreed should be the subject of a patent's limited right to exclude." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 922 n.5 (Fed. Cir. 2004).

A patent has two chief parts:

First, it contains a specification describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." Second, a patent includes one or more "claims," which "particularly

---

[1] This is the second set of *Markman* briefs that the parties filed because the Court granted Vanair's motion for claim construction of an additional disputed term that arose during the first round of briefing. [Filing No. 63.]

[2] Federal Circuit precedent (to the extent not inconsistent with Supreme Court precedent) controls issues "intimately involved in the substance of enforcement of the patent right." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1362-63 (Fed. Cir. 2004). If the issue is not unique to patent law, the law of the regional circuit applies (here, the Seventh Circuit). *Id.*

3

> poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention." . . . The claim defines the scope of a patent grant.

*Markman v. Westview Instruments*, 517 U.S. 370, 373-74 (1996) (quoting 35 U.S.C. § 112, but all other quotations, citations, and alterations omitted). "A patent is indefinite if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1340-41 (Fed. Cir. 2015). That said, some "modicum of uncertainty" must be taken into account due to the "inherent limitations of language." *Id.*

"'It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Aventis Pharm. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). Thus, there is a "heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc.*, 715 F.3d at 1373.

Before the Court can consider the question of infringement, it must "determine[] the scope and meaning of the asserted patent claims." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318 (Fed. Cir. 2011). Claim construction is a matter of law, *Markman*, 517 U.S. at 981, although underlying factual findings—such as when the Court resolves a dispute between experts—are reviewed for clear error, *Teva Pharm.*, 135 S. Ct. at 841-43.

"To ascertain the scope and meaning of the asserted claims, [the Court] look[s] to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence." *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1303 (Fed. Cir. 2011). Generally, claim terms should be given their ordinary and customary meaning from the perspective of a person having ordinary skill in the art at the time of the effective date of the patent application. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

Sometimes the ordinary meaning of claim language is readily apparent and the Court may decline to provide any further construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). In many cases, however, "the meaning of a claim term as understood by persons of skill in the art is not readily apparent." *Id.*

The "claim construction process entails more than viewing the claim language in isolation," and "[c]laim language must always be read in view of the written description." *Retractable Technologies*, 653 F.3d at 1305. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. There is "no magic formula or catechism for conducting claim construction." *Id.* at 1324. Instead, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (citation omitted). The Court will set forth additional interpretative canons as necessary to address the parties' arguments regarding the disputed claim terms.

### III.
### CONSTRUCTION OF THE CLAIM TERMS AT ISSUE

Although the parties initially disputed additional claim terms, they agreed at the *Markman* hearing that after briefing, only two terms remain that require the Court's construction. The Court will separately address each disputed term and the parties' arguments thereon.

A. "Mechanical Power Input Connection Means"

| Term | Contour's Proposal | Vanair's Proposal | Court's Construction |
|---|---|---|---|
| "mechanical power input connection means" [Filing No. 47-1 at 15 (claim 1)] | "A power takeoff output of the transmission" [Filing No. 79 at 11] | "the AC generator input shaft" [Filing No. 69 at 20] | *the AC generator input shaft* |

The disputed portion of claim 1 of the patent-in-suit was narrowed during the parties' briefing to the term "mechanical power input connection means." The parties agree that means-plus-function analysis applies pursuant to 35 U.S.C. 112 ¶ 6, and that the function to be performed by the disputed term is "to receive power from said prime mover for driving said AC electrical generator to produce electricity." [Filing No. 69 at 7; Filing No. 70 at 4.] The parties disagree, however, about the corresponding structure that enables that function. [Filing No. 70 at 4.]

Contour proposes construing "mechanical power input connection means" as "[a] power takeoff output of the transmission."[3] [Filing No. 70 at 12; Filing No. 79 at 11.] Contour contends that the disputed term must be part of the invention's power takeoff ("PTO") unit because according to Contour, the specification makes it clear to one of ordinary skill in the art that the PTO output of the transmission is what enables the auxiliary generator to draw power from the engine. [Filing No. 70 at 5.] Contour claims that Vanair's proposed construction "would distort claim 1 so that it fails to cover any of the disclosed embodiments in the '303 Patent," which Contour emphasizes is rarely the correct construction. [Filing No. 70 at 6.]

---

[3] Contour proposed various constructions of the disputed term, possibly because the disputed portion of claim 1 narrowed throughout briefing. The Court will only address Contour's final proposed construction of the disputed term.

Vanair proposes construing "mechanical power input connection means" as "the AC generator input shaft." [Filing No. 69 at 20.] Vanair points out that the disputed term is used for the first time in claim 1 as part of the limitation—"an AC electrical generator positioned in said vehicle and having a mechanical power input connection means to receive power from said prime mover for driving said AC electrical generator to produce electricity." [Filing No. 69 at 6 (citing Filing No. 47-1 at 15 (claim 1)).] Vanair emphasizes that the word "having" in the limitation precedes the disputed term and immediately follows the AC electrical generator. Vanair contends that given the plain and ordinary meaning of the word "having," the disputed term must be part of the AC electrical generator, which Vanair argues the specification confirms. [Filing No. 69 at 8-9.] Vanair also emphasizes various discovery responses from Contour, which it contends confirm that the disputed term is part of the AC generator, not the PTO unit. [Filing No. 69 at 11-12.]

In its reply, Contour points to a portion of the specification that it claims "makes clear to one of skill in the art that it is the power takeoff output or PTO 50 of the transmission which enables the auxiliary generator to draw power from the engine." [Filing No. 70 at 5 (referencing Filing No. 47-1 (col. 6, lines 12-15)).] Contour disputes Vanair's interpretation of the word "having" in the limitation to claim 1, noting that it does not necessarily mean that one thing is included in another but can also mean that something stands in a certain relationship with something else. [Filing No. 70 at 6.] Finally, Contour argues that Vanair mischaracterizes Contour's interrogatory responses, [Filing No. 70 at 7], although Contour retreated from that position at the *Markman* hearing.

Use of the word "means" creates a presumption that means-plus-function analysis applies. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349-52 (Fed. Cir. 2015) (citing to 35 U.S.C. 112 ¶ 6). "Construing a means-plus-function claim term is a two-step process. The court must

7

first identify the claimed function. Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* A structure disclosed in the specification "qualifies as 'corresponding structure' if the intrinsic evidence clearly links or associates that structure to the function recited in the claim." *Id.* However, "if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim, a means-plus-function clause is indefinite." *Id.*

The parties agree that the function to be performed by the "mechanical power input connection means" is "to receive power from said prime mover for driving said AC electrical generator to produce electricity." [Filing No. 69 at 7; Filing No. 70 at 4.] Contour contends that transmission accessory drive gear 158 and axially displaceable spur gear 168, which are depicted as part of the PTO unit, perform that function. [Filing No. 79 at 9 (highlighting structures in Figure 7, which is an enlarged longitudinal fragmentary section view of the PTO unit).] Vanair contends that mechanical power input 46, which is part of the AC electrical generator, performs that function. [Filing No. 69 at 7.]

Claim 1 discloses "an AC electrical generator positioned in said vehicle and *having* a mechanical power input connection means to receive power from said prime mover for driving said AC electrical generator to produce electricity." [Filing No. 47 at 15 (claim 1) (emphasis added).] While the parties dispute the meaning of the word "having," the Court agrees with Vanair that there is no indication that anything other than the plain and ordinary meaning of that term applies—*i.e.*, that the mechanical power input connection means is part of the AC generator, not just that the two "stand[] in a specified relationship" but are not necessarily connected, as Contour contends. [Filing No. 70 at 6.] This construction is bolstered by the specification in the patent-in-

8

suit, which describes the structure performing the agreed-upon function as something that the AC generator "has":

> The AC generator has a mechanical power input **46** which is adapted to receive a rotatable input from an RPM ratio assembly. Assembly **48** is connected to a PTO unit **50** via an appropriate mechanical link such as a shaft **52**. PTO unit **50** is driven from transmission **16** through an engageable and disengageable mechanical connection **54**. A solenoid **56** mechanically connects with PTO unit **50** through a connection **58** to engage or disengage PTO unit **50** and thus drive the AC generator **44** as will be described later.

[Filing No. 47-1 at 13 (col. 3, lines 38-46).] Given this description, the Court agrees with Vanair that "mechanical power input 46" is the structure that performs the agreed-upon function of the mechanical power input connection means and is part of the AC generator, not the PTO unit.

Additionally, the specification consistently uses language describing mechanical power input 46 as something related to AC generator 44, not PTO unit 50. For example:

> control **90** to hydraulic motor **92** which has as its output the mechanical input **46** to the AC generator **44**. A return line **94**

[Filing No. 47-1 at 14 (col. 5, lines 1-2).]

> generator. Hydraulic drive **100** comprises a hydraulic pump **104** driven by input shaft **102** and supplying fluid through line **106** via adjustable flow control **108** to hydraulic motor **110** which has its output connected to input shaft **46** for AC generator **44**. A return line **112** extends to a hydraulic

[Filing No. 47-1 at 14 (col. 5, lines 31-35).]

> to AC generator **44**. As shown particularly in FIG. **4**, RPM ratio device comprises a housing **144** having journaled therein an input pulley **146** and output pulley **148**. Output pulley **148** is fixed to the input **46** to AC generator **44**. Input shaft **46** is a shaft and pulley **148** is secured to the shaft in normal fashion. A belt **150** extends between pulleys **146** and

[Filing No. 47-1 at 14 (col. 6, lines 23-28).]

The figures in the patent-in-suit also confirm the Court's construction. Figure 1 is a "schematic drawing of a vehicle and an AC electrical generator system embodying the present

9

invention." [Filing No. 47-1 at 12.] It depicts mechanical power input 46 with AC generator 44, not PTO unit 50:



Fig. 1

[Filing No. 47-1 at 4.] Likewise, Figure 3 is "a schematic diagram showing an alternate embodiment of the present invention adaptable for provision of electrical power while a vehicle is moving." [Filing No. 47-1 at 12.] The alternate embodiment also depicts mechanical power input 46 with AC generator 44, not PTO unit 50:



Fig. 3

[Filing No. 47-1 at 6.]

By contrast, the diagram to which Contour directed the Court at the hearing shows a greatly enlarged longitudinal section view of the PTO unit. [Filing No. 79 at 9]. Contour contends that accessory drive gear 158 and axially displaceable spur gear 168 perform the agreed-upon function from inside the PTO unit:



Fig. 7

[Filing No. 47-1 at 10 (Figure 7 of '303 patent).] AC generator 44 is not visible in Figure 7.

The Court concludes that Contour's proposed construction—placing the means to perform the agreed-upon function inside the PTO unit—is inconsistent with the language of claim 1 itself, as confirmed by the specification and applicable figures in the patent-in-suit. Contour's proffered construction is also inconsistent with its discovery responses, as Vanair has pointed out. [Filing No. 69 at 9-13.] Although Contour argued during briefing that Vanair's characterization of Contour's discovery responses was misleading, [Filing No. 70 at 7-8], Contour admitted the inconsistency at the *Markman* hearing. Contour further admitted that it has not sought to amend the discovery responses at issue, despite an ongoing obligation to do so. See Fed. R. Civ. Pro.

11

26(e) (imposing an obligation to supplement discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . ."); *see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (emphasizing that "discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case").

Specifically, in its Disclosure of Asserted Claims and Preliminary Infringement Contentions, Contour stated that Vanair's accused system infringed on the now-disputed portion of claim 1 because

> It is inherent that the generator utilized in the Accused Vanair Systems has a mechanical power input connection, which is typically an input shaft, which drivers the internal components of the generator to produce electricity.

[Filing No. 71 at 12.]  And in response to Vanair's interrogatory request for Contour to indicate the structure corresponding to the claim limitation where the term "mechanical power input connection means" is first used, Contour cited a portion of the specification referencing the AC generator.  [Filing No. 69 at 12 (citing Filing No. 69-3 at 14 (referencing Filing No. 47-1 at 13 (col. 3, lines 13-46))).]  This confirms that, at least initially, Contour construed the "mechanical power input connection means" as related to the AC generator, not the PTO unit.

For the reasons stated herein, the Court concludes that the proper construction of the claim term "mechanical power input connection means" is "the AC generator input shaft."

B. "A Relay Device …"

| Term | Contour's Proposal | Vanair's Proposal | Court's Construction |
|---|---|---|---|
| "a relay device receiving inputs from said engine control module and said transmission control module for enabling operation of said AC electrical generator when certain control parameters exist in said engine control module and said transmission control module"<br><br>[Filing No. 47-1 at 15 (claim 10)] | "a relay device receiving inputs from each of the engine control module and the transmission control module for enabling operation of said AC electrical generator when certain control parameters exist in each of the engine control module and transmission control module"<br><br>[Filing No. 68 at 17] | "a relay actually receiving inputs from the engine control module and transmission control module and that these inputs enable operation of the AC generator when certain parameters exist in both the engine control module and transmission control module"<br><br>[Filing No. 69 at 21] | *"a relay device receiving inputs from each of the engine control module and the transmission control module for enabling operation of said AC electrical generator when certain control parameters exist in each of the engine control module and transmission control module"* |

The parties' positions regarding the necessity for and proper construction of claim 10 have changed throughout the litigation. [*See* Filing No. 33-2 (currently disputed portion of claim 10 not included on parties' disputed claim chart).] The Court granted Vanair's Motion for Additional Claim Construction to allow the parties to brief a subsequent dispute over the proper construction of claim 10. [Filing No. 63.] Because additional briefing has narrowed the dispute, the Court will only address the disputed portion of claim 10 as it was presented at the *Markman* hearing.

The parties dispute the portion of claim 10 beginning with "a relay device receiving inputs . . . ." [Filing No. 47-1 at 15.] They agree that the disputed claim does not include technical or unusual terms, [Filing No. 68 at 13; Filing No. 69 at 17], and they have stipulated to the following meaning of the terms "engine control module" ("ECM") and "transmission control module" ("TCM"):

13

| | |
|---|---|
| "engine control module" (Claim 10) | An electronic control unit which receives various signals from the engine based on operating parameters and transmits control signals to the engine in response to those operating parameters based on a preprogrammed algorithm. |
| "transmission control module" (Claim 10) | An electronic control unit, which controls the operation of a vehicle's transmission based on operating parameters and transmits control signals to the transmission. The transmission control module and engine control module coordinate control of the transmission and engine to maintain appropriate operation of both systems. |

[Filing No. 46 at 3.] The parties request the Court's construction, however, to determine whether claim 10 provides an apparatus claim (Contour's position) or an improper method step within an apparatus claim (Vanair's position).

"[A]pparatus claims cover what a device is, not what a device does." *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1090 (Fed. Cir. 2009) (citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990)). When a single patent claim recites "both an apparatus and a method of using that apparatus," the claim is indefinite. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). This is because "as a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus." *Id.* The rule is "well recognized" by the United States Patent and Trademark Office. *Id.* (citing *Manual of Patent Examination Procedure*, § 2173.05(p)(II) (1999) ("A single claim which claims both an apparatus and the method steps of using the apparatus is indefinite under 35 U.S.C. § 112, second paragraph.")).

When claim language from an apparatus claim is directed to user actions, not system capabilities, it signifies an improper method step. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011). Language such as "wherein said user completes" or "wherein said user selects" within an apparatus claim indicates an improper method limitation that renders the claim indefinite. *See H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1336

14

(Fed. Cir. 2014) (affirming district court's decision finding apparatus claim indefinite for containing method limitation with language "wherein said user completes" and "wherein said user selects") (citing *IPXL Holdings*, 430 F.3d at 1384 ("the user uses the input means . . .") and *In re Katz*, 639 F.3d at 1318 ("wherein . . . callers digitally enter data" and "wherein . . . callers provide . . . data")). An apparatus claim is not necessarily indefinite for using functional language. *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008).

      The parties do not dispute that the opening portion of claim 10 conveys that it is an apparatus claim. [Filing No. 47-1 at 15 (claim 10) ("Apparatus as claimed in claim 9 wherein said prime mover has an [ECM], and a [TCM] and . . .")).] Vanair argues, however, that the disputed portion of the claim results in an improper method step because "the word 'receiving' is the present participle of the verb 'receive' . . . and indicates an action . . . ." [Filing No. 69 at 18 (citing Filing No. 47-1 at 15 (claim 10) ("a relay device receiving inputs from said [ECM] and said [TCM] for enabling operation . . .")).] As Contour points out in reply, Vanair cites no caselaw that an apparatus claim is improperly converted into a method claim simply because it utilizes the present participle of a verb. [Filing No. 70 at 10-11.] Instead, Vanair generally cites two cases from the Federal Circuit Court of Appeals without pinpointing or quoting the specific portion of those cases on which it relies. [Filing No. 69 at 18.] A brief review of those cases reveals that they do not stand for the broad position for which Vanair advocates. *See Rembrandt Data Technologies, LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (summarily affirming a district court's decision without elaboration that a portion of a claim utilizing the word "transmitting" rendered the claim indefinite); *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (holding that functional language does not necessarily render an apparatus claim

15

indefinite). In fact, Contour relies on *Microprocessor* to support its position, [Filing No. 70 at 11], and pointed out at the *Markman* hearing that the portion of the claim at issue in *Rembrandt Data Technologies* is distinguishable because it recited a separate element that was a method step on its own, [*see* Filing No. 78 at 18 ("transmitting the trellis encoded frames" set forth as independent clause of claim at issue therein)].

The Court agrees with Contour that the disputed word "receiving" in claim 10 of the patent-in-suit does not convey a method step rendering the claim indefinite. Claim 10 is an apparatus claim in which the word "receiving" conveys the system capabilities. [Filing No. 47-1 at 15 ("a relay device receiving inputs from said [ECM] and said [TCM] . . .").] Unlike apparatus claims that have been found to contain an improper method step, claim 10 does not reference the user or direct user actions. *See H-W Tech.*, 758 F.3d at 1336 (holding that language referencing the user within an apparatus claim indicates an improper method step). Accordingly, the Court rejects Vanair's position that claim 10 contains a method step rendering it indefinite.

The parties agree that the disputed claim does not include technical or unusual terms. [Filing No. 68 at 13; Filing No. 69 at 17.] Thus, the only remaining dispute between the parties' proposed constructions is whether the relay device receives inputs from "each of" the ECM and the TCM (Contour's position), [Filing No. 68 at 17; Filing No. 70 at 12], or from "both" the ECM and the TCM, (Vanair's position), [Filing No. 69 at 19]. This appears to be a distinction without a difference. Given that Vanair was willing to concede that "each of" was the proper construction in its proposed surreply, [Filing No. 72-1 at 19], the Court will adopt that. The Court rejects Vanair's addition of the word "actually" before "receiving," as that appears to be an attempt to render "receiving" an improper method step, which the Court has already rejected.

For the reasons stated herein, the Court concludes that the proper construction of the disputed portion of claim 10 is "a relay device receiving inputs from each of the engine control module and the transmission control module for enabling operation of said AC electrical generator when certain control parameters exist in each of the engine control module and transmission control module."

### IV.
### CONCLUSION

The definitions set forth above will control the interpretation of the patent-in-suit going forward, and the Clerk is directed to **TERMINATE** the pending motion for *Markman* construction. [Filing No. 68.] The Court requests that the assigned Magistrate Judge assist the parties in the development of a Phase II Uniform Patent Case Management Plan.

Date: September 2, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF:**

Steven G. Cracraft
BRANNON SOWERS & CRACRAFT PC
scracraft@bscattorneys.com

John C. McNett
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
jmcnett@uspatent.com

William A. McKenna
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
wmckenna@uspatent.com